UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| PHILLIP KING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:06CV1514 CDP |
| | ) |
| JANET VESSELL, et al., | ) |
| | ) |
| Defendant. | ) |

# **MEMORANDUM AND ORDER**

Plaintiff Phillip King spent sixteen years in jail after being wrongfully convicted of a jail-house assault. The incident took place while King and the victim, Kevin Moore, were confined to the Jefferson County jail in Hillsboro, Missouri. King has now sued some of the jail personnel responsible for the investigation of the assault. He seeks to recover damages under 42 U.S.C. § 1983 for violation of his due process rights, and also brings a variety of state-law tort claims. In response to defendants' motion for summary judgment, King has conceded that some of his claims cannot succeed. I conclude that the undisputed facts show that none of plaintiff's claims can succeed and defendants are entitled to summary judgment.

Several facts about both the assault and the investigation are disputed, and so I am assuming as true plaintiff's version of the events. I do this despite

plaintiff's non-compliance with Local Rule 7-4.01(E). King simply denied certain facts that defendants said were undisputed, but he did not provide specific references to the record to support his denials. I have independently reviewed all of the evidence submitted by both parties, and have accepted plaintiff's version of the facts where disputes exist. Even if I assume that plaintiff's version is correct, plaintiff has shown, at most, that defendants may have been negligent in their investigation. That is not a sufficient basis to impose liability. Defendants are entitled to qualified immunity from the constitutional claims by qualified immunity, and the state-law claims fail either on the merits or on the basis of official immunity.[1]

## Facts

On June 24, 1988, plaintiff Phillip King was confined to the Jefferson County jail in Hillsboro, Missouri, awaiting a preliminary hearing. Kevin Moore had just been brought into custody, also as a pretrial detainee. King and Moore were among thirteen men held in the jail's "A Tank." The "A Tank" had four cells, each with four bunks, but the inmates could move freely from cell to cell

---

[1]King concedes that summary judgment should be granted to defendants Wally Gansmann and Tom Wille. He separately seeks to dismiss defendant Dennis Ruth. King also concedes that summary judgment should be granted on Count III (§ 1983 conspiracy), Count V (malicious prosecution), and Count VII (abuse of process). I will therefore only discuss the remaining counts against the remaining defendants, Janet Vessell and Charles Bennett.

within the tank.  Moore, who was only nineteen years old, had come in with an "attitude," and incurred the scorn of several other inmates.  Inmates David Coleman and Dixie Godfrey began harassing Moore and told him that he had to "choose up" with one of the other inmates: "somebody in this tank was going to be his man."  In King's view, it was obvious that this was a gag – in other words, the inmates were trying to scare Moore because they did not like his attitude.  Moore said he would choose Dixie Godfrey, and after the other inmates, including King, laughed at the scene, Godfrey told them to disperse.  A little later, Godfrey called the others to come back to the cell.  Coleman and Godfrey told Moore to take off his clothes and lie on the bunk.  Coleman then got some lotion, rubbed it on Moore's "butt" and told Moore he was going to have anal intercourse with him (using street language).  After everyone, including King, laughed, Coleman and Godfrey told Moore to go to the showers and told him no one was going to do anything to him.  Moore put on his underwear, and the other inmates again laughed at him, this time because of his bikini underwear.

As Moore was walking to the shower, King gave him a pair of boxer shorts and told him to wear them so people wouldn't laugh at him.  Paul Pruett, another of Moore's cell mates, indicated he did not want Moore to stay in the cell, so King traded places with him, and King spent the night in the cell with Pruett, Coleman

and Godfrey, and Moore celled with other detainees. In the night, Moore's new cell mates harassed him by spitting on him and setting things on fire under his feet. When he woke up the next morning, they had written things on his body, including the phrase "Skip's Baby." King was known by the nickname "Skip."

The next morning Moore approached defendant Charles Bennett as soon as he came on duty. Bennett was a deputy sheriff assigned to the jail as a jailer. Moore told Bennett that he had been assaulted and harassed the previous night. He stated that four inmates had participated in the assault. Bennett showed Moore photographs of the inmates who were housed in "A Tank," but he omitted the photograph of David Coleman, who, according to King's testimony, was the one who actually touched Moore.[2] Moore identified the assailants as Dixie Godfrey, Stanley Bell, King, and Paul Pruett. Moore specifically identified King as the person who had rubbed cream on him and threatened him.

Bennett took photographs of Moore's body, advised his supervising sergeant about the assault, and recommended that the incident be further investigated by detectives of the Jefferson County Sheriff's Department. Bennett

---

[2]Bennett now says that he showed Moore photos of all the A Tank inmates, but the report he wrote at the time listed all the other inmates but omits Coleman. This creates a genuine dispute of fact, but I am assuming that the report is correct, and that Bennett in fact did *not* show a photo of Coleman.

then prepared a report, and after that he had no further involvement in the investigation.

Defendant Janet Vessell was a Sergeant with the Jefferson County Sheriff's Department and was assigned to the detective bureau. On June 27, 1988 she was assigned to investigate the assault and she and Lieutenant Kenneth Kluth interviewed Moore. In the interview Moore again stated that the four detainees involved in the assault were Godfrey, King, Bell, and Pruett. He identified Godfrey as the "instigator." Vessell and Kluth then interviewed Godfrey, King, Bell, and Pruett individually. King and Bell invoked their Miranda rights and were returned to their cells. Godfrey told the officers that he witnessed a portion of the assault but did not participate. He also stated that he could not identify who was involved. Pruett stated that he did not witness or know anything about any assault on Moore. After the interviews, Vessell prepared a report describing the interviews. Thereafter, she and Kluth prepared individual "Felony and/or Misdemeanor Warrant Applications" for Godfrey, King, Bell, and Pruett. King was apparently the only one who was prosecuted.[3]

---

[3] King believes that he was prosecuted for this because the Jefferson County prosecutors were angry that the murder case on which he had initially been detained was dismissed for insufficient evidence at the preliminary hearing. Whether his belief is true has no bearing on whether Bennett or Vessell are liable in this suit.

Moore testified at King's preliminary hearing, in a deposition, and at trial that King was the detainee who had put the lotion on him and threatened him. King was convicted at a jury trial in April of 1990. Because he had a prior conviction for forcible rape, he was sentenced to thirty years in the Missouri Department of Corrections.

King filed a petition for writ of habeas corpus in state court. Moore testified at the habeas hearing that he no longer believed that King was involved in his assault. On December 21, 2005, the state court granted the petition, finding that King's claim of actual innocence was well taken.

Moore testified in the deposition in this case that he could in fact only identify his assailant by his voice, because he could not see any faces when he was face down on the bunk. He testified that when he initially identified King to Bennett and when he gave his later testimony he believed he was telling the truth. It was only much later, when someone showed him a video tape of King and he heard King's voice, that he decided the voice did not sound the same and that he had testified incorrectly. He now believes that all the meetings with the prosecutor helped convince him that King was his assailant, although he could not recall anything any prosecutor said or did that convinced him of that. The prosecution agreed that if he testified against King, the charges then pending against him (for

felony theft) would be dismissed.  Moore also testified that he cannot remember whether or not he told deputy Bennett that he could only identify his assailant by voice, but that he does not believe that Bennett did anything to try to convince him that King was the assailant.

## Discussion

The standards for summary judgment are well settled.  In determining whether summary judgment should issue, the Court views the facts and inferences from the facts in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  The moving party has the burden to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  Once the moving party has met this burden, the nonmoving party may not rest on the allegations in its pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists.  Fed. R. Civ. P. 56(e).  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial." Celotex, 477 U.S. at 323.[4]

   I.   King's Claims Under 42 U.S.C. § 1983

Government officials are entitled to qualified immunity from suit under 42 U.S.C. § 1983 "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Hassan v. City of Minneapolis, 489 F.3d 914, 919 (8th Cir. 2007), quoting Sanders v.City of Minneapolis, 474 F.3d 523, 526 (8th Cir. 2007). Qualified immunity allows government officers to make reasonable errors and protects them from liability for mistaken judgments. Amrine v. Brooks, 522 F.3d 823, 831 (8th Cir. 2008). Courts must resolve a "threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Scott v. Harris, 127 S.Ct. 1769, 1774 (2007). The court must first determine whether the allegations amount to a constitutional violation, and then determine whether the right was clearly established. Id. I must therefore first look to whether King has shown a constitutional violation at all.

Courts have recognized that a reckless investigation can be a violation of due process. See Wilson v. Lawrence County, Mo., 260 F.3d 946 (8th Cir. 2001).

---

[4]I have chosen not to address the question whether documents King signed during his attempts to get out of jail (in which he agreed not to sue) are valid, as it is not necessary to decide a complicated waiver issue when the claims fail on the merits anyway.

"The test for whether state officers' actions violate this protected liberty interest is whether those actions shock the conscience." Amrine, 522 F.3d at 833. Allegations of negligent or grossly negligent conduct do not meet this standard. Rather, the conduct must be intentional or reckless. Id. The conduct that King complains constituted reckless investigation in this case is limited: Bennett failed to include David Coleman's photograph in the photo array he showed Moore, which arguably led Moore to wrongly identify King as the assailant; Vessell failed to interview inmates held in the "A Tank" other than those Moore had identified as participating in the assault. These actions may constitute negligence, but they can hardly be considered reckless, especially given that neither Bennett nor Vessell was involved in any further investigation or prosecution of the case.

The Eighth Circuit's recent decision in Amrine is instructive. In Amrine the court concluded that the facts were insufficient to make out a claim of reckless investigation. 522 F.3d at 835. As with the case here, there is no evidence that anyone was coerced or threatened, or that investigators purposely ignored evidence suggesting that King was innocent. As in Amrine, mere failure "to follow through on investigating other leads" is not sufficient. Id. King has not presented any evidence that Vessell or Bennett ever received any evidence that was inconsistent with a conclusion that King, Godfrey, Bell, and Pruett were the

attackers or that they had a reason to target King for this crime. See also Clemmons v. Armontrout, 477 F.3d 962, 966 (8th Cir. 2007)(no due process violation even though investigator failed to interview an eyewitness who had told guards someone else committed the crime).

In fact, King's opposition brief does not even attempt to demonstrate that Vessell and Bennett acted recklessly or intentionally. Instead, he relies upon his expert witnesses testimony that their behavior "fell below the standard of care and was negligent." As noted above, negligence, even gross negligence, is not actionable under 42 U.S.C. § 1983 for violations of due process rights by investigators and police officers. As a result, defendants are entitled to summary judgment on King's claims under 42 U.S.C. § 1983, both on the basis of qualified immunity and on the merits.

    II.    <u>Negligence and False Arrest</u>

Defendants Vessell and Bennett claim that they are entitled to summary judgment on King's negligence and false arrest claims under either the doctrine of official immunity or under the public duty doctrine. The Missouri Supreme Court recently clarified these doctrines, in <u>Southers v. City of Farmington</u>, 2008 WL 2346191 (Mo. June 10, 2008). Official immunity is a judicially-created doctrine that "protects public employees from liability for alleged acts of negligence

committed during the course of their official duties for the performance of discretionary acts." Id. at * 3. See also Brown v. Tate, 888 S.W.2d 413, 415 (Mo. Ct. App. 1994). King argues that Vessell and Bennett were acting in their ministerial capacities when they investigated the assault and battery. The undisputed evidence shows that King and Vessell are entitled to official immunity because their investigatory actions were discretionary, not ministerial.

"Whether an act can be characterized as discretionary depends on the degree of reason and judgment required." Southers, at *3. The court should look at the nature of the officer's duties, whether the acts involve the exercise of professional expertise and judgment, and the consequences of withholding immunity." Id., Brown, 888 S.W.2d at 415. Missouri courts have determined a number of things which require a police officer's professional expertise and judgment, including:

> deciding whether to arrest or detain a person for driving while intoxicated, deciding how best to apprehend a gunman when surrounding the gunman's apartment, deciding whether to set up barricades or warning devices when investigating an accident, disciplining prisoners, executing a search warrant, deciding when to pursue and end pursuit of a fleeing vehicle, and pursuing another vehicle.

Brown, 888 S.W.2d at 415 (internal citations omitted; cited with approval in Southers at *8). Acts are considered ministerial if they are clerical in nature and are required to be performed in a proscribed manner without the officer exercising

judgment. Beaver v. Gosney, 825 S.W.2d 870, 874 (Mo. Ct. App. 1992)

The decisions regarding how to proceed in a criminal investigation fall squarely within the category of discretionary acts. The actions here cannot be classified as ministerial – the decision on how to interview the victim, whether and how to prepare a photo array, how to interview suspects, whether to interview additional witnesses – these all go to the heart of the discretion vested in law enforcement officials. While Bennett and Vessell might have violated general police procedures in the opinion of King's expert, King has not presented any evidence that Jefferson County Sheriff's procedures required Bennett and Vessell to do anything differently.

King relies on the Missouri Supreme Court's decision in Jungerman v. City of Rayton, 925 S.W.2d 202, 206 (Mo. 1996), but Jungerman has little bearing on my decision here. It held that the act of inventorying and securing the property of an arrestee was a ministerial rather than discretionary act. The plaintiff presented evidence that the department's training manual, ordinances, and regulations detailed the procedures for booking arrestees, including the inventory and protection of property, and thus the officer need only follow the established procedures and had no need to exercise professional judgment. The investigatory activities taken here are far from ministerial. Other states also apply the official

immunity doctrine to investigations. See, e.g., Sena v. Commonwealth of Massachusetts, 629 N.E.2d 986, 991 (Mass. 1994); Torchinsky v. Siwinski, 942 F.2d 257, 264 (4th Cir. 1991); Dear v. City of Irving, 902 S.W.2d 731, 737 (Tex. Ct. App. 1995). I have found no case law from any jurisdiction that would indicate that the decision regarding whom to interview or use in a photo lineup is a ministerial act. Vessell and Bennett are entitled to official immunity on King's negligence and false arrest claims.

    III.    Restitution Claim

Defendants' initial motion argues that Missouri does not recognize a separate cause of action for restitution. See 35 Missouri Practice § 44:9 (2008). Still, an action for restitution has been recognized by a federal court in this district. See City of St. Louis v. American Tobacco Co. Inc., 70 F. Supp. 2d 1008, 1015 (E.D. Mo. 1999). I do not need to determine whether such an action exists under Missouri law. Even if Missouri would recognize an action for restitution as stated in the Restatement of Restitution § 115, the undisputed facts show that King cannot establish the essential elements of such a claim.

The Restatement of Restitution § 115 sets forth the elements of a claim of restitution as: "A person who has performed the duty of another by supplying things or services, although acting without the other's knowledge or consent, is

entitled to restitution from the other if (a) he acted unofficiously and with intent to charge therefor, and (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety."[5] Restatement of Restitution § 115 (1937). In this case, King does not claim that he performed the duty of Vessell or Bennett. If anything, he claims that he performed the duty (jail time) of Coleman (the real perpetrator), and King does not claim that he served his prison sentence with an expectation that he would be able to charge Vessell and Bennett for this service. As a result, Vessell and Bennett are entitled to summary judgment on this King's restitution claim as well.

## Conclusion

This case involves a very unfortunate situation; King served sixteen years in prison based on victim testimony that was later recanted. While King might not have been convicted had Vessell and Bennett taken different investigatory steps, King cannot present any evidence that their actions were done in bad faith. At worst, King can establish negligent behavior. Vessell and Bennett are entitled to

---

[5]These elements are somewhat similar to those of a Missouri action for unjust enrichment, "(a) a benefit conferred by one party on another; (b) appreciation by the receiving party of the fact that what was conferred was a benefit; and (c) acceptance and retention of the benefit that would render that retention inequitable." Cridlebaugh v. Putnam County State Bank of Milan, 192 S.W.3d 540, 543 (Mo. Ct. App. 2006). King's response makes it clear that he intended to state a claim under the Restatement of Restitution § 115, but even if he intended to state a claim for unjust enrichment, defendants would be entitled to summary judgment on such a claim as well.

qualified immunity on the constitutional claims and to official immunity on the negligence and false arrest claims. King has failed to plead the essential elements of a restitution claim. Because all of King's claims fail, I will grant summary judgment to the defendants.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment [#46] is granted, and plaintiff Phillip King's complaint is dismissed in its entirety.

**IT IS FURTHER ORDERED** that plaintiff's motion to dismiss defendant Dennis Ruth [#42] is granted.

A separate judgment in accordance with this memorandum and order will be entered this same day.

                                                          _____
                                                          CATHERINE D. PERRY
                                                          UNITED STATES DISTRICT JUDGE

Dated this 23rd day of June, 2008.